# LUIS RUBERT Y CATALA
## *v.*
## L. H. GRAHAME ET AL.

San Juan, Law, No. 641.

1. In a contest between private parties claiming to be the owners of cer-
tain marshy lands, and the insular authorities of the island, claim-
ing the same as public property, upon which the island's concessionees
are extending a drainage system, a restraining order pending the liti-
gation will not be issued against the defendants, especially where it is
manifest that no irreparable damage is being done.
2. Under the peculiar land laws of Porto Rico, a bill to remove clouds from
and quiet a title to real estate, and to have registered titles canceled
and others inscribed, and often incidentally to get possession of the
land, is the only adequate remedy. In such a case the ordinary action
of ejectment is often wholly inadequate.

Opinion filed June 18, 1909.

*Mr. Chas. M. Boerman,* attorney for plaintiff.

*Messrs. H. M. Hutchinson* and *W. N. Landers,* Assistant
Attorneys General of the island, for the defendants.

RODEY, Judge, delivered the following opinion:

It is hard to tell what the proceeding before us is. On the
5th instant the complainants filed what they call a bill of com-

Rubert y Catala v. Grahame.

plaint, and with it a petition for a restraining order. An order to show cause why the restraining order should not issue was served upon the respondents, and a hearing was had on the 14th instant. The controversy involves over 200 cuerdas of land.

A statement of facts is necessary to an understanding of what we shall order in the case. The court takes judicial notice of enough of current history of the island and of the facts developed at the hearing before us to be able to make such a statement.

From time immemorial there has existed along the north shore of the island of Porto Rico, near the town of Arecibo, a slough, said to be several miles in length, known as "El Caño de Tiburones." At least for several years last past, if not also from time immemorial, this Caño de Tiburones and more or less of the marsh lands surrounding it have been considered as public land, which it is said was owned by the government in Spanish days, and which passed to the United States under the treaty of Paris, and afterwards was turned over to the island of Porto Rico, either separately or under the Foraker act. Because of this belief that these marshes were public property of the island, the local legislative assembly of the island, within the last year, made some sort of a contract or lease, or gave, or authorized the giving, of a contract or franchise regarding the same to the respondent Borda and his assigns, for, as it is said, a period of forty years, he or they to drain the same and make such profitable use of the same as they could for cane raising or other purposes during such period, the estate to revert to the people of Porto Rico at the end of the contract, lease, or franchise, whichever it is. From the bewildering number of affidavits presented at the hearing, and from our own knowledge

of current history, and from the files in other suits pending, it appears that after the said Borda secured this franchise or whatever it is, the island, through its officers, demarked the marshes, and staked them off from what the island authorities believed to be the boundary lines of the surrounding property owners. In some cases great opposition on the part of the adjoining owners to the placing of these lines at once developed, while in others, as, for instance, in the case at bar, practically no opposition was manifested at first until the boundary line was staked off and a fence erected. Several months, in fact, as it is said, passed between the time of the staking off of the land in controversy, before any dispute arose between the agents of respondent Borda and the complainants here.

Complainants now contend that they and their predecessors in interest have owned and possessed the land in controversy along a portion of the south border of this Caño de Tiburones for more than half a century, and that the true boundary line of the Caño de Tiburones is in the center of the deepest place of the narrow, open water slough. Respondent Borda and the people of Porto Rico, through the Attorney General's office, claim that the true south boundary of the land embraced in what is known as the Caño de Tiburones is the meandering line demarking the edge of the marshes on the south, and which land it is claimed has always been under water until the recent digging of a portion of a drainage canal caused the waters to recede therefrom, but that this occurred after the demarking aforesaid had taken place between the parties or their agents. This is the sole ultimate question of fact in the case; that is, whether or not the government land includes these marshes, or whether such marshes belong to the adjoining owners on the south.

Rubert y Catala v: Grahame.

. It is said a multitude of suits have been brought in the insular courts with reference to different portions of this same marsh land along the shores of the caño. At least one other suit is pending in this court ( Mercelis v. Grahame) ; but, in this latter suit, the parties, instead of quarreling over the issuance of a restraining order, stipulated that matters should remain *in statu quo* until a hearing could be had at some convenient time, which has not yet taken place.

If we can gather anything at all from the affidavits presented at the hearing, it is that, in truth and in fact, this marshy land does not have any value practically the whole of every year, and only begins to have value as the waters recede from it. We therefore fail to see how the meager allegations of the complaint, that irreparable damage is being done by the fencing of this ground or depriving the complainants of the use of it, can be strictly true, because it does not appear that the land can be used for much of anything unless drained. We can well see that the question that is here involved between the people of Porto Rico and their lessee or concessionee Borda and his assigns, on the one side, and these owners, on the other, is so important that it will never be settled until it is settled right by the final decree of a court of last resort.

It is our opinion that it is one of those cases involving so many complicated questions of law, even though it may be based ultimately upon a question of fact, as to where the proper boundary line is, that no court of law in an ejectment suit or suits could afford proper relief. It will, in our opinion, require a legal investigation involving Spanish titles and customs as to public and private lands, as to the law of waters, as to the statutes of limitation against the government and against pri-

Rubert y Catala v. Grahame.

vate individuals, as to presumption of grants or actual grants, and as to occupation or nonoccupation, and may involve the actual canceling of so-called registered title, and the registering of others under proper decrees; and hence we feel that only a court of equity could give such relief. See our opinion in case 586, Hernandez v. Ochoa y Hermano, in this court, filed under date of December 26, 1908, ante, 400.

This whole Caño de Tiburones proposition is a large important government undertaking, and it is no part of the duty of the courts in any country to unnecessarily embarrass the government in its doings or functions. Therefore, it is our opinion that the proper course for complainants in this case is to file a bill *quia timet,* to quiet their title, with sufficient proper allegations and parties to settle the whole controversy once and for all. We do not think irreparable injury is being done by the respondents. On the contrary, we think that little or no damage is being done the complainants, and therefore, so as not to embarrass the government, it is just as well to let such a suit go to final decree, and when such a decree is entered, the court can put the rightful owner into actual physical possession. Refusing the restraining order, which we do not think was proper in any event, will induce the parties to proceed with greater haste to a final issue in the main case, and will force them to submit proper pleadings and a proper issue to bring that about. In order to avoid useless pleading, demurring, answering, and excepting, the court advises complainants to amend their bill, for it considers it insufficient as filed, so that the same can at once be answered and a proper issue made.

For the reasons stated, the restraining order is denied.

Rubert y Catala v. Grahame.

The court hopes that, in this annoying controversy, the parties will act sensibly on both sides, and let matters remain *in statu quo* until final decree, which it is hoped will be at a short day.